**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

Kemen Lavatos Taylor, II,                                        Case No. 16-cv-3893 (DSD/LIB)

                            Petitioner,

v.                                                                         **REPORT AND RECOMMENDATION**

Tom Roy,

                            Respondent.

This matter came before the undersigned United States Magistrate Judge pursuant to a referral for report and recommendation in accordance with the provisions of 28 U.S.C. § 636 and Local Rule 72.1, as well as, upon Petitioner Kemen Lavatos Taylor's Amended Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. [Docket No. 24].

For the following reasons, the Court recommends Petitioner's Amended Petition, [Docket No. 24], be **DENIED**, and further recommends declining to grant Taylor a certificate of appealability (COA).

I.      **Background**

This case's procedural history is complicated, but understanding that history—especially Taylor's direct appeal—will help explain the discussion below. Thus, the Court will recount key, relevant aspects of Taylor's trial, his direct appeal, his first § 2254 petition, and his state-court petition for postconviction review, and then highlight the arguments raised by the present Amended Petition.

A.      **Trial**

In October 2012, a grand jury indicted Taylor on nine counts of first-degree murder and first-degree attempted murder, including in relevant part one count of murder with premeditation

and two counts of murder while committing another felony.  Register of Actions, <u>State v. Taylor</u>, Case No. 27-CR-12-33028 (State-Court Docket) (case-information section), <u>available at</u> http://pa.courts.state.mn.us (last accessed Jan. 3, 2019); <u>cf.</u> Minn. Stat. § 609.185 (a)(1), (3) (first-degree-murder statute).  The charges concerned an August 2011, incident in which several teenagers were shot at; two were hit, and one (Rayjon Gomez) died.  <u>State v. Taylor</u>, 869 N.W.2d 1, 7 (Minn. 2015) (<u>Taylor I</u>).

Two of the issues from Taylor's trial are relevant to the Amended Petition.  <u>See</u>, (Pet.'s Mem., [Docket No. 25], at 8–12, 22–23.  First, before the trial, the district court, "[t]o prevent disruptions by persons in the gallery, . . . issued a list of 'basic rules' for [trial] spectators," including bans on "profanity, threatening gestures, gum chewing, and cell phones."  <u>Taylor I</u>, 869 N.W.2d at 10.[1]  The court also "required spectators to show photographic identification before being allowed entry into the courtroom."  <u>Id.</u> at 10.  Taylor did not object to these rules, including the photo-ID requirement.  <u>Id.</u>

Second, the district court excluded certain evidence that Taylor had wished to submit relative to two witnesses.  <u>Id.</u> at 12.  Under the prosecution's case theory, Taylor himself did not fire any shots during the August 2011, incident.  <u>Id.</u> at 7.  The shots during the incident were fried by Derrick Catchings and Donquarius Copeland, who along with Taylor were allegedly members of the Young-N-Thuggin gang.  <u>Id.</u>  The prosecution's account was that Taylor drove Catchings and Copeland into a north Minneapolis neighborhood to find "Skitz," an affiliate of another gang who had allegedly shot Taylor's younger brother.  <u>Id.</u>  After someone in the vehicle believed that he saw Skitz, Catchings and Copeland fired several shots at people in an alley—including the shot leading to Gomez's death.  <u>Id.</u>

---

[1] The trial court stated that there had been actual instances of disruptions at past appearances.  (<u>See</u>, Pet.'s Mem., [Docket No. 25], at 10) (quoting trial transcript).

At trial, Taylor wanted to introduce certain evidence that Catchings's and Copeland's motive for the shooting did not involve Taylor. Id. at 12. While not expressly explained, Taylor appears to believe that because he did not fire the critical shots his liability under Minnesota's first-degree-murder statute hinged on him sharing a motive with the shooters. (Pet.'s Mem., [Docket No. 25], at 22).[2] At trial, Taylor sought to ask "Copeland and Catchings about previous gang-related incidents," apparently to show that they had independent reasons—apart from avenging the shooting of Taylor's brother—to attack those associated with rival gangs. Taylor I, 869 N.W.2d at 12. The trial court excluded that evidence under Minnesota Rule of Evidence 403,[3] stating that "the fact that other people also had a motive that was either the same or different doesn't negate the fact that [Taylor] had a motive" and that "the fact that other people may have had different motives is [not] probative for anybody's case, and it certainly has the possibility of confusing the issues in the case." Id.[4]

Taylor's trial ended with the jury finding him guilty on all counts. Id. at 10. The court sentenced Taylor to life without the possibility of parole as well as two concurrent 180-month sentences. State-Court Docket; Pet.'s Mem., [Docket No. 25], at 1.

---

[2] In relevant part, Minnesota's first-degree-murder statute reads as follows:
(a)    Whoever does any of the following is guilty of murder in the first degree . . . :
(1)    causes the death of a human being with premeditation and with intent to effect the death of the person or of another; [or]
. . .
(3)    causes the death of a human being with intent to effect the death of the person or another, while committing or attempting to commit burglary, aggravated robbery, kidnapping, arson in the first or second degree, a drive-by shooting, tampering with a witness in the first degree, escape from custody, or any felony violation of chapter 152 involving the unlawful sale of a controlled substance[.]

Minn. Stat. § 609.185(a)(1), (3).
[3] Under Rule 403, relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."
[4] Taylor I provides no citation for the quoted material, but it appears to be from the trial transcript.

B.    **Direct Appeal**

After his conviction, Taylor—represented by appointed counsel—filed a direct appeal with the Minnesota Supreme Court.  (Pet.'s Mem., [Docket No. 25], at 2; Resp. Mem., [Docket No. 30], at 5).[5]  His counsel's appellate brief raised numerous issues, including that (1) the district court's photo-ID requirement violated Taylor's Sixth Amendment right to a public trial, and (2) the district court's Rule 403 ruling was erroneous because it denied Taylor the right to present evidence in his own defense and denied him the right to confront the witnesses against him.  (Resp. Mem., [Docket No. 30], at 5–6); Taylor I, 869 N.W.2d at 10–14.  Taylor also filed a pro se brief raising various other issues.  (Resp. Mem., [Docket No. 30], at 6).

Taylor asserts that while his direct appeal was pending, he asked his appointed counsel to stay his appeal so as to press certain claims through a motion for postconviction relief.  (Pet.'s Mem., [Docket No. 25], at 2).  As Taylor explains it, "Minnesota requires appellants to seek a stay of their direct appeal in order to pursue postconviction issues and then combine both the direct appeal and postconviction appeal together if postconviction relief is denied."  Id. (citing Minn. R. Crim. Pro. 28.02(4)(4); State v. Garasha, 393 N.W.2d 20 (Minn. Ct. App. 1986)).[6]  Taylor alleges his appointed counsel refused to seek a stay, so Taylor asked his counsel to withdraw so that Taylor could proceed pro se.  Id. at 2–3.  His counsel filed that motion to withdraw on March 31, 2015—

---

[5] Minnesota defendants convicted of first-degree murder can appeal directly to the Minnesota Supreme Court, bypassing the state's intermediate court of appeals.  Minn. R. Crim. Pro. 29.02(1)(a).

[6] Rule 28.02(4)(4) states that "[i]f, after filing a notice of appeal, a defendant determines that a petition for postconviction relief is appropriate, the defendant may file a motion to stay the appeal for postconviction proceedings."  In Garasha, the Minnesota Court of Appeals analyzed competing threads of Minnesota caselaw and laid out the following rules for defendants seeking to raise ineffective-assistance-of-counsel claims:

> [A] defendant intending to raise the issue of ineffective assistance of trial counsel among other issues should first file a direct appeal.  If an evidentiary hearing is necessary to resolve factual issues, the defendant should move the appellate court for a stay of the appeal pending the hearing.  This procedure is not necessary if the legal basis for the claim is not available at the time of the direct appeal.

393 N.W.2d at 22 (citations and footnote omitted).

more than a month after the Minnesota Supreme Court had scheduled oral argument on Taylor's appeal for April 8, 2015. State v. Taylor, Case No. A14-0942, Order 2 (Minn. Apr. 28, 2015) (April 2015 Order). The Minnesota Supreme Court granted the motion to withdraw, and it altered the appeal's scheduling: the court would still consider the appeal on April 8, 2015, but on the "non-oral" calendar for nonargued cases. Id. at 1.

On April 8, 2015, the Minnesota Supreme Court met and considered Taylor's appeal as scheduled. Id. Later that day, Taylor's prior attorney submitted a motion by Taylor to stay the appeal so that Taylor could file a petition for postconviction relief in state court. Id. The motion asserted that Taylor "feels that it's appropriate for him to file a petition for postconviction relief to expand the record concerning effective assistance of counsel, newly discovered evidence, and to explore Brady material." State v. Taylor, No. 14-0942, Mot. to Stay Direct Appeal for Postconviction Proceedings Pursuant to Minn. R. Crim. P. 28.02, Subd. 4(4) at 2 (Minn. Apr. 8, 2015). The prosecution opposed the motion, noting (among other things) that the Supreme Court had already considered the case and that Taylor had not "provide[d] any specifics regarding his potential claims." State v. Taylor, No. A14-0942, State's Resp. to Mot. to Stay Direct Appeal for Postconviction Proceedings 1 (Minn. Apr. 22, 2015). The Minnesota Supreme Court denied the motion, observing that "[t]he appeal has been submitted to the court and an opinion will be filed in due course." April 2015, Order.

Taylor then moved to voluntarily dismiss his appeal, stating that he "feels and strongly believes that the issues raised in [his counsel's brief] are inadequate to warrant relief and do not meaningfully represent the issues and arguments which would show that [Taylor's] trial was unfair . . . ." State v. Taylor, No. A14-0942, Not. of Mot. and Mot. for Voluntary Dismissal of

5

Direct Appeal (May 26, 2015).  He asserted that various issues had been inadequately factually developed below, describing them as follows:

> Appellant wants to raise and challenge among other issues: trial counsel's ineffectiveness for failing to call certain witnesses, failing to adequately challenge certain prejudicial and unconstitutional evidence, failing to present an adequate defense, failing to challenge the State's <u>Brady</u> violation; judicial bias on behalf of the trial judge; and misconduct on behalf the prosecution for intentionally suppressing and withholding <u>Brady</u> material, misstating burden of proof, and other various misconducts of conduct on by the prosecution.

<u>Id.</u>

In Taylor's view, to develop a factual record for these issues, he needed to petition the trial court for postconviction review first, do the needed factual record development there, and then proceed with his direct appeal.  <u>Id.</u>  Importantly, however, the issues that Taylor listed do not include the public-trial argument made by his appointed attorney's appellate brief.[7]

The Minnesota Supreme Court denied Taylor's motion to dismiss, and on August 26, 2015, issued an opinion affirming Taylor's convictions.  <u>Taylor I</u>, 869 N.W.2d at 23.  Addressing the trial court's photo-ID requirement, <u>Taylor I</u> observed in relevant part that "[t]he record does not show whether the identification requirement was enforced and, if so, whether anyone who sought to enter the courtroom could not."  <u>Id.</u> at 10.  In the Minnesota Supreme Court's view, this meant that there was no record evidence that "a significant portion of the public was unable to attend due to the identification requirement; that Taylor, his family, his friends, or any witnesses were excluded; or that any individuals actually excluded were known to Taylor."  <u>Id.</u> at 11.  The court thus concluded that the photo-ID requirement was not a "true" closure—that is, the closure was

---

[7] Indeed, the excerpted portion of the dismissal motion suggests that Taylor believed that the public-trial argument—like the other arguments in his appointed attorney's brief—was "inadequate to warrant relief" and "[did] not meaningfully represent the issues and arguments" suggesting that his trial had been unfair.

"too trivial to amount to a violation of the [Sixth] Amendment." Id. (quoting State v. Lindsey, 632 N.W.2d 652, 660–61 (Minn. 2001)) (internal citation omitted; brackets in Taylor I).

Taylor I also rejected Taylor's argument about the excluded evidence concerning Catchings and Copeland. As already noted, this argument had two prongs: Taylor argued that excluding the evidence violated his right to present evidence in his own defense, and that it violated his right to confront witnesses. As to the argument's first prong, Taylor I held that even if it had been error to exclude the evidence, the error was harmless. Id. at 12–13 ("We are satisfied beyond a reasonable doubt that a reasonable jury would have reached the same verdict even if Taylor had been able to present evidence that Copeland and Catchings had been involved in specific, prior gang-related incidents."). Criticially, the court stated, "the district court's assumed error did not preclude Taylor from exploring Copeland's and Catchings' gang-related motives; it only precluded evidence of particular previous acts." Id. at 13. Indeed, the court noted various things Taylor had been allowed to offer into evidence suggesting that Copeland and Catchings "were not primarily or solely motivated by the shooting of Taylor's brother." Id.

As for Taylor's confrontation argument, the court again assumed that excluding the evidence was error, but again found the error harmless. Id. at 13–14. The court noted that while Copeland's and Catchings's testimony was "critically important to the State's case," their testimony had been corroborated by multiple sources, Taylor had been able to impeach Copeland and Catchings in numerous ways, and Taylor had been able to "elicit a considerable amount of testimony on alternative motives." Id.

### C.    First § 2254 Petition

On November 14, 2016, Taylor filed this action's original petition for a writ of habeas corpus. (Pet. Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody

[Docket No. 1]).  He asserted twelve grounds of relief, including (as relevant here) that (1) the state court's photo-ID requirement violated his right to a public trial; (2) the state court violated Taylor's right to due process by barring the introduction of evidence regarding Copeland's and Catching's alternative motives; and (3) his appellate counsel was ineffective because he had failed to look for spectators who had been prevented from attending his trial due to the photo-ID requirement.  (Id. at 5, 7, 17).[8]

On March 1, 2017, Taylor filed a petition for postconviction relief in Minnesota state court. Pet. for Postconviction Relief, State v. Taylor, Case No. 27-CR-12-33208 (Minn. Dist. Ct. Mar. 1, 2017) (Postconviction-Relief Petition), filed within Resp't's App., [Docket No. 31] (Roy Appendix); see gen., Section I.D infra.  The same day, he asked this Court to stay these § 2254 proceedings so that he could exhaust his state-court postconviction remedies.  (Mot. for Stay of Proceedings [Docket No 11]).  This Court promptly granted that motion.  (Order [Docket No. 12]).

### D.    State Postconviction Proceedings

The gravamen of Taylor's state Postconviction-Relief Petition was that Taylor wanted to introduce evidence that various "[c]ommunity members" and "relatives of [Taylor]" had in fact been denied access to Taylor's trial because they "could not show a Photo ID"; he provided nine affidavits from individuals stating that they had been excluded from the trial.  (Postconviction-Relief Pet. at 1).[9]  Because Taylor I's public-trial-right discussion reflected there being no record evidence that the photo-ID requirement caused anyone's exclusion, Taylor sought an evidentiary hearing to "expand the record with respect to the courtroom closing."  Id. at 2.  Taylor further suggested that the decision by his direct-appeal counsel not to stay the direct appeal "in order to

---

[8] Because Taylor's original habeas petition is not consecutively paginated, references to it use the page numbers provided by the Court's ECF filing system.
[9] The affidavits are attached to the Postconviction-Relief Petition, filed as part of Respondent's Appendix.

expand the record on the closed courtroom issue" constituted ineffective assistance of counsel that itself violated Taylor's constitutional rights. Id.

The state trial court denied the Petition in an Order dated April 28, 2017. State v. Taylor, No. 27-CR-12-33208, Order Denying Pet'r's Req. for Postconviction Relief (Minn. Dist. Ct. Apr. 28, 2017) (hereinafter "April 2017, Order"), filed within Roy App. In that April 2017, Order, the court cited State v. Knaffla, 243 N.W.2d 737 (Minn. 1976), for the proposition that "in the case of post-conviction relief, all matters which have already been fully and fairly litigated should not be re-litigated," and Doppler v. State, 660 N.W.2d 797 (Minn. 2003), for the point that "[w]hen a petitioner bases his claims for post-conviction relief upon facts and issues that he either raised or knew about at the time of the direct appeal, Minnesota courts do not allow for reconsideration of those issues." Id. at 3. The court then determined that under this precedent, Taylor's attempt to factually supplement his public-trial-right argument was Knaffla-barred: he had already brought the public-trial-right argument to the Minnesota Supreme Court, which had rejected it. Id. at 4. The court also observed that while exceptions to the Knaffla rule exist, Taylor had not argued that they applied to his case. Id.

Taylor appealed that decision arguing that the district court had abused its discretion in refusing him an evidentiary hearing. Taylor v. State, No. A17-0965, Appellant's Br. and Addendum 4–5 (Minn. Aug. 29, 2017), filed within Roy App. In Taylor's view, the affidavits presented to the state court below comprised enough factual material to mandate an evidentiary hearing about a possible violation of his public-trial right. Id. at 6–8. He also claimed that Knaffla did not bar the Postconviction-Review Petition because of one of the rule's exceptions—that a postconviction-review petition can raise a previously addressed issue "when fairness so requires and the petitioner does not deliberately or inexcusably fail to raise the issue on direct appeal." Id.

9

at 8–9 (quoting <u>Doppler</u>, 660 N.W.2d at 801–02).  In response, the State argued, inter alia, that

because Taylor had not argued this interests-of-justice exception to the state district court, he had

forfeited the argument.  <u>Taylor v. State</u>, No. A17-0965, Resp't's Br. 6–7 (Minn. Oct. 12, 2017),

<u>filed within</u> Roy App.

The Minnesota Supreme Court issued <u>Taylor II</u> on April 4, 2018, affirming the state court's

denial of the Postconviction-Review Petition.  <u>Taylor v. State</u>, 910 N.W.2d 35, 36 (Minn. 2018)

(<u>Taylor II</u>).  The decision rested on agreement with the State's forfeiture argument: because Taylor

"did not argue in the district court that the interests-of-justice exception should be applied in his

case," the court held, "he has forfeited appellate review of that argument."  <u>Id.</u> at 38–39 (citing

<u>Brocks v. State</u>, 883 N.W.2d 602, 605 (Minn. 2016)).

### E.    Amended § 2254 Petition

After the Minnesota Supreme Court issued <u>Taylor II</u>, Taylor informed this Court of the

decision.  (Letter [Docket No. 20]).  This Court lifted the preexisting stay, and it ordered Taylor to

file an amended § 2254 petition "representing the current status of issues in the present case."

(Order [Docket No. 21]).

Taylor filed the Amended Petition on June 7, 2018.  (Am. Pet. [Docket No. 25]).  Therein,

Taylor raises six arguments.[10]

- First, Taylor argues that <u>Taylor I</u> "unreasonably applied clearly established federal law" while determining that the state court had not violated his public-trial rights. <u>Id.</u> at 8.
- Second, Taylor contends that if he "is required to show prejudice" to bring his first argument, "he should be granted a hearing to present his claim because the Minnesota courts denied him an opportunity to present a factual basis for his claim and show prejudice . . . ." <u>Id.</u> at 12.

---

[10] Certain aspects of the Amended Petition suggest that there are only five arguments, <u>see, e.g.</u>, <u>Id.</u> at 25 (summary of how arguments interconnect, referring to Arguments 1 through 5), but the Petition's argument section has six subheadings, one of which is misnumbered, <u>see Id.</u> at 15, 22.  The Court also notes that in the following list, the Court has prioritized describing Taylor's arguments as he presents them.  As the analysis section below shows, Taylor's actual arguments are sometimes difficult to decipher.

- Third, he claims that this Court should grant him a hearing "on cause and prejudice to show (1) that Minnesota's postconviction process is ineffective to protect Taylor's and other indigent applicant[s'] due process rights and (2) determine whether Taylor's appellate counsel rendered ineffective assistance of counsel by not providing Taylor access to the state postconviction process." Id. at 15.
- Fourth, he asserts that the trial court's decision to bar him from offering "alternative perpetrator evidence" violated his "Sixth Amendment right to present a complete defense." Id. at 22.
- Fifth, he suggests that the cumulative effect of the first and fourth errors listed above justifies issuance of a writ of habeas corpus. Id. at 23.
- Sixth, he argues that the ineffective assistance of his appellate counsel—noted above as a ground for excusing procedural default—is also a standalone ground for habeas relief. Id. at 24.

## II.    ANALYSIS

The Court will now address the arguments from the Amended Petition. By way of summary, the Court reaches the following conclusions: First, the Taylor I discussion of the trial court's photo-ID requirement was not contrary to, or an unreasonable application of, clearly established federal law. Second, Taylor procedurally defaulted his factually supplemented version of his public-trial argument. Third, while Taylor contends that—for at least two reasons—cause and prejudice exist which excuse that procedural default, neither argument has merit. Fourth, Taylor argues that the trial court's exclusion of alternative-motive evidence gives him a separate ground for habeas relief, but here too Taylor I's treatment of the issue is not contrary to, or a misapplication of, federal law. Fifth, Taylor's assertion that cumulative error supports a grant of habeas relief here is a wholly without merit: The Court has found no error which may be cumulated, and the Eighth Circuit does not provide habeas relief on the basis of cumulative error. Finally, the Court finds unpersuasive Taylor's claim that ineffective assistance of counsel provides him a standalone ground for habeas relief. For reasons discussed in the cause-and-prejudice discussion, Taylor has procedurally defaulted this ineffective-assistance argument as well.

### A.    The Photo-ID Requirement and Clearly Established Federal Law

Taylor first argues that the Minnesota Supreme Court unreasonably applied clearly established federal law in Taylor I's public-trial analysis. (Pet.'s Mem. [Docket No. 25], at 8–12). Taylor contends that Taylor I created a legally incorrect condition for finding public-trial-right violations—specifically, that to show such a violation, one must show that a court action "impacted a specific portion, or significant portion of the public." (Id. at 11). That condition, he says, is no part of clearly established federal law. (Id. at 11–12). Respondent maintains that Taylor I "was not contrary to or an unreasonable application of" Supreme Court precedent. (Resp. Mem., [Docket No. 30], at 11–14).

Section 2254(d)(1) limits the substantive legal grounds for granting a state-court prisoner's habeas claim concerning a matter that state courts have addressed:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim . . . resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States . . . .

28 U.S.C. § 2254(d)(1).

As the Eighth Circuit has explained, "contrary to" and "unreasonable application of" have specific meanings here:

> In Williams v. Taylor, [529 U.S. 362 (2000)], the Supreme Court held that a state court decision is contrary to clearly established federal law if it arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if it decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. In addition, a state court decision is an unreasonable application of clearly established federal law if it identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

Brende v. Young, 907 F.3d 1080, 1085 (8th Cir. 2018) (quoting Nash v. Russell, 807 F.3d 892, 896–97 (8th Cir. 2015)).

Of the three types of argument Brende notes, Taylor's argument alternated between claiming that (1) Taylor I reaches a conclusion opposite to one reached by the Supreme Court on a legal question, and (2) Taylor I identifies a correct legal principle from Supreme Court cases, but unreasonably applies it.  (See gen., Pet.'s Mem., [Docket No. 25], at 8–12).  Taylor relies here on two cases: Waller v. Georgia, 467 U.S. 39 (1984), and Presley v. Georgia, 558 U.S. 209 (2012) (per curiam).  (See, Pet.'s Mem., [Docket No. 25], at 8–12).  For the reasons discussed herein, however, the Court finds that Taylor I neither contradicts nor unreasonably applies those cases.

A review of Waller and Presley makes the point evident.  In Waller, numerous defendants involved in a gambling operation had been charged under various Georgia statutes.  467 U.S. at 42.  Before a trial of one defendant group, certain defendants moved to suppress various wiretaps and evidence seized from various defendants' homes.  Id. at 41–42.  Prosecutors moved to close any motion-related hearing, asserting that under Georgia statutes, public release of certain information used to justify the evidentiary seizures might make the evidence inadmissible.  Id. at 42.  The trial court granted the prosecution motion, closing the suppression hearing "to all persons other than witnesses, court personnel, the parties, and the lawyers."  Id.  After the hearing, the court suppressed certain materials; at the subsequent trial, held in open court, Waller and a codefendant were found guilty of certain statutory violations.  Id.

On appeal, defendants argued that the trial-court decision to close the suppression hearing violated their Sixth Amendment public-trial right.  Id.  The Georgia Supreme Court affirmed, ruling that "the trial court had properly balanced petitioners' rights to a public hearing against the privacy rights of others under Georgia law and the Sixth Amendment."  Id. at 43 (citing Waller v.

State, 303 S.E.2d 437 (Ga. 1983)). The United States Supreme Court subsequently granted certiorari.

Waller's first holding is that the Sixth Amendment public-trial right applies to a suppression hearing (as opposed to a trial itself). Id. at 44–47. As Taylor I concerns a trial closure, Taylor I is not contrary to, or an unreasonable application of, this first Waller holding.

A second part of Waller explains the tests that courts must apply to determine whether a particular closure is warranted. Id. at 48–49. Specifically, "the party seeking to close the hearing must advance an overriding interest that is likely to be prejudiced, the closure must be no broader than necessary to protect that interest, the trial court must consider reasonable alternatives to closing the proceeding, and it must make findings adequate to support the closure." Id. at 45, 48 (citing Press-Enter. Co. v. Super. Ct. of Cal., 464 U.S. 501, 510 (1984)). The Waller Court found that the trial-court decision to close the suppression hearing failed this test: the prosecutors' proffer on privacy was insufficiently specific; the resulting findings used to justify closure were overbroad; and the court did not consider alternatives to closing the entire hearing. Id. at 48–49. The Court thus determined that closing the suppression hearing had violated the petitioners' public-trial right. Id. at 48.

This second part of Waller is more pertinent to Taylor's argument, but even so, the Court finds that Taylor I is not contrary to, or an unreasonable application of, this second part of Waller. The primary discussion of Taylor I was determining the threshold matter of whether the trial court had closed a trial in the first instance. See, e.g., Taylor I, 869 N.W.2d at 12 ("Thus, we hold that the photographic identification requirement did not constitute a 'true' closure."). Only if that condition is met—that is, only if a closure actually occurred—does the need arise to consider the closure's justifications. The discussion and holding of Taylor I are distinct from the concerns in

14

Waller, which concerned an unambiguous closing and so had to delve into the trial-court rationales for the closing. Because nothing in Waller discusses the standard for whether or not a closure has occurred, this Court cannot say that Taylor I is contrary to Waller or unreasonably applies Waller.

Pressly provides Taylor no further support. The Pressly Court confronted a state-court judge who had excluded the public (including the defendant's uncle) from the voir dire at defendant's trial. 558 U.S. at 209–10. Pressly's first holding is that the Sixth Amendment public-trial right applies to voir dire proceedings. Id. at 213. Unsurprisingly, nothing in that discussion is in any tension with Taylor I, which concerned access to a trial itself.[11]

Pressly next turned to "exceptions to [the] general rule" that trial proceedings should be open. Id. The Court here quoted Waller at length:

> While the accused does have a right to insist that the *voir dire* of the jurors be public, there are exceptions to this general rule. "[T]he right to an open trial may give way in certain cases to other rights or interests, such as the defendant's right to a fair trial or the government's interest in inhibiting disclosure of sensitive information." "Such circumstances will be rare, however, and the balance of interests must be struck with special care." Waller provided standards for courts to apply before excluding the public from any stage of a criminal trial:
> "[T]he party seeking to close the hearing must advance an overriding interest that is likely to be prejudiced, the closure must be no broader than necessary to protect that interest, the trial court must consider reasonable alternatives to closing the proceeding, and it must make findings adequate to support the closure."

Id. at 213–14 (quoting Waller, 467 U.S. at 45, 48) (citations omitted). After this discussion, the Pressly Court turned to that case's key issue: what Waller demands of trial-court judges with respect to assessing alternatives to fully closing a hearing. Id. at 214–16.

In affirming the Pressly trial court, the Georgia Supreme Court had held that "trial courts need not consider alternatives to closure absent an opposing party's proffer of some alternatives." Id. at 214. The U.S. Supreme Court determined that this flatly contradicted Waller's statement

---

[11] Indeed, in Pressly, the state-court judge who closed the voir dire proceedings expressly acknowledged that the trial itself would be open. 558 U.S. at 210.

that "the trial court must consider reasonable alternatives to closing the proceeding" because the Waller holding did not hinge—in any way—on whether a party had offered alternatives to closure. Id. at 214–15.

None of this is supportive of Taylor arguments here, for essentially the same reason that Waller does not lend him support. Taylor I does not concern the standards for whether a trial closure is justified; it concerns instead the logically prior question of whether a closure meriting Sixth Amendment concern has occurred at all. For this reason, the Court finds that Taylor I is not contrary to, or an unreasonable application of, any rule of law set forth in Pressly.[12]

### B.    Procedural Default of Taylor's Factually Supplemented Public-Trial Claim

Taylor's second argument is difficult to discern. (See, Pet.'s Mem., [Docket No. 25], at 12–15). Taylor appears to suggest in two ways that he did not procedurally default the issue of whether factual evidence supports the claim that people were actually excluded from his trial.[13] The Court disagrees: Taylor did procedurally default the supplemented public-trial claim, and each of his assertions attempting to avoid that conclusion is without merit.

Before seeking a writ of habeas corpus, a state prisoner must exhaust all available state remedies. See, 28 U.S.C. § 2254(b)(1). To give a state a chance to fix alleged violations of its prisoners' federal rights, "the prisoner must fairly present his claim in each appropriate state court (including a state supreme court with powers of discretionary review) . . . ." Baldwin v. Reese,

---

[12] That is not to say that every Court or even this Court would reach the same conclusion as the Minnesota Supreme Court. When addressing a § 2254 petition claiming that a state court legally erred, however, this Court does not review questions afresh; it merely determines if a state-court decision cannot possibly be reconciled with the identified U.S. Supreme Court precedent. See, e.g., Woods v. Donald, 135 S. Ct. 1372, 1376 (2015) ("When reviewing state criminal convictions on collateral review, federal judges are required to afford state courts due respect by overturning their decisions only when there could be no reasonable dispute that they were wrong."); Harrington v. Richter, 562 U.S. 86, 103 (2011) ("As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."). Assigned that specific task, the Court concludes that Taylor I is not contrary to, or an unreasonable application of, clearly established federal law.
[13] For the sake of clarity, the Court will refer to this claim as the supplemented public-trial claim.

16

541 U.S. 27, 29 (2004) (quoting cases; internal quotation marks omitted).  A claim has been "fairly presented" in state court when either the state court rules on the claim's merits or, more relevant here, the petitioner "presents his claims in a manner that entitles him to a ruling on the merits." Gentry v. Lansdown, 175 F.3d 1082, 1083 (8th Cir. 1999) (citing Castille v. Peoples, 489 U.S. 346, 351 (1989)).

Here, the Minnesota courts did not address Taylor's supplemented public-trial claim on the merits.  Whether he "fairly presented" that claim to the Minnesota courts thus hinges on whether he presented it "in a manner that entitle[d] him to a ruling on the merits."  The answer here is plainly in the negative.

The Eighth Circuit Court of Appeals established in Hall v. Delo that "[a] federal claim has not been fairly presented to the state courts when the state court has declined to decide the federal claim on the merits because the petitioner violated a state procedural law."  41 F.3d 1248, 1250 (8th Cir. 1994) (citing Jones v. Jerrison, 20 F.3d 849, 854 (8th Cir. 1994)); see also, e.g., Yang v. Knutson, No. 18-cv-0014 (SRN/TNL), 2018 WL 4178189, at *7 (D. Minn. June 12, 2018) (quoting Hall), report and recommendation adopted, 2018 WL 4168995 (D. Minn. Aug. 30, 2018).  That rule squarely applies here: the Minnesota courts refused to consider the supplemented public-trial claim because Taylor's attempt to raise it presented an unexcused violation of the state's Knaffla rule.  See, Section I.D supra.

Furthermore, "[w]hen there is no longer any state court remedy available for a claim that has not previously been fairly presented to the state's highest court, that claim has been 'procedurally defaulted.'"  Maxwell v. Gau, No. 12-cv-1770 (ADM/TNL), 2014 WL 1371912, at *9 (D. Minn. Apr. 8, 2014) (citing Coleman v. Thompson, 501 U.S. 722, 750 (1991); McCall v.

Benson, 114 F.3d 754, 757 (8th Cir. 1997)). Here, Knaffla precludes Taylor from trying to reassert his supplemented public-trial claim in state court, so that claim has been procedurally defaulted.

With this in mind, the Court turns to Taylor's apparent arguments why he has not procedurally defaulted the supplemented public-trial claim. First, Taylor points to 28 U.S.C. § 2254(e) and related caselaw. (Pet.'s Mem., [Docket No. 30], at 13). Section 2254(e) limits when federal courts can hold evidentiary hearings on claims: "[i]f *the applicant* has failed to develop the factual basis of a claim in State court proceedings," it states, "the court shall not hold an evidentiary hearing on the claim unless" certain special conditions apply. Cf. 28 U.S.C. § 2254(e)(2)(A)–(B) (setting conditions). Taylor claims that § 2254(e)'s use of "applicant" means that this rule does not apply to him, for it was not his—the applicant's—fault that he did not present the supplemented public-trial claim below. (Pet.'s Mem., [Docket No. 30], at 13).

Putting aside the "fault" question, § 2254(e) is inapposite here. Section 2254(e) says when an evidentiary hearing is appropriate for a claim, but whether that claim is procedurally defaulted is a separate, logically prior question. This is because if a claim is procedurally defaulted (and there is no showing of cause and prejudice sufficient to excuse the default), a federal court will not address the claim—no evidentiary hearing will be necessary. Thus, the Court finds unpersuasive Taylor's argument based on § 2254(e).[14]

Second, Taylor presents a bullet-point list of various facts that purportedly show that the Minnesota Supreme Court was wrong to decide in Taylor II that he had "forfeited his right to a hearing" on the supplemented public-right claim. (Pet.'s Mem., [Docket No. 30], at 13–15). These facts generally suggest that something unfair happened when Taylor's appellate counsel failed to

---

[14] Indeed, all of the cases Taylor cites in this section address § 2254(e) rather than the exhaustion and procedural-default issues of § 2254(b). See, Holland v. Jackson, 542 U.S. 649, 652–53 (2004) (discussing § 2254(e)); Williams v. Taylor, 529 U.S. 420, 431 (2000) (same); Davis v. Lambert, 388 F.3d 1052, 1061 (7th Cir. 2004) (same); Matheney v. Anderson, 253 F.3d 1025, 1039 (7th Cir. 2001) (same); Fisher v. Lee, 215 F.3d 438, 454 (4th Cir. 2000) (same).

move for a stay of Taylor's direct appeal. These facts may bear on whether cause exists sufficient to excuse Taylor's procedural default. But they do not change the fact that the Minnesota courts "declined to decide [Taylor's] federal claim on the merits because [he] violated a state procedural law." That test indicates whether or not a claim was "fairly presented," which in turn drives the determination of whether a claim has been procedurally defaulted. As a result, Taylor's factual recitation does not affect the conclusion that he procedurally defaulted the supplemented public-trial claim.

### C.    Cause and Prejudice Excusing Taylor's Default of His Factual Argument

The third argument in Taylor's Memorandum presents two reasons why this Court should excuse the procedural default of his supplemented public-trial claim: (1) he was unfairly prevented from getting needed supplementary factual material during his <u>Taylor I</u> appeal because of Minnesota procedures[15] that allegedly allow lawyers to decline to move to stay direct appeals to pursue postconviction-relief petitions; and (2) he received ineffective assistance of counsel when his appointed direct-appeal counsel refused to seek a stay of his direct appeal. (<u>See</u>, Pet.'s Mem., [Docket No. 30], at 15–19 (state-procedure discussion); 19–21 (ineffective-assistance discussion)). The Court will consider these two grounds in turn.

#### 1.    Arguments regarding Minnesota state process

Although the specifics of Taylor's argument regarding Minnesota state court procedures are unclear, it appears that Taylor's discussion of Minnesota procedures commingles three distinct arguments. As already noted, one argument is that these procedures generate cause and prejudice sufficient to excuse Taylor's procedural default of the supplemented public-trial claim. (<u>Id.</u> at 16–17). But Taylor also seems to suggest that Minnesota state procedures excuse him from needing

---

[15] Specifically, Rule 28.02(4)(4) of the Minnesota Rules of Criminal Procedure.

to meet the exhaustion requirement at all, (Id. at 15 (citing 28 U.S.C. § 2254(b)(1))), and furthermore, that they create an independent ground for habeas relief. (Id. at 16–18) (suggesting that Minnesota procedures violate due process). The Court will address these arguments in turn.

### a)    Exhaustion under 28 U.S.C. § 2254(b)

As previously noted, under § 2254(b)(1)(A), a habeas application "shall not be granted unless it appears that . . . the applicant has exhausted the remedies available in the courts of the State." But § 2254(b)(1)(B) creates two exceptions; one is that § 2254(b)(1)(A) does not apply where "circumstances exist that render [the available state corrective] process ineffective to protect the rights of the applicant." Taylor claims that his situation fits into this exception. Specifically, he says that Minnesota procedures are ineffective at protecting prisoners' right because they give direct-appeal counsel the option to refuse to move to stay direct appeals to allow pursuit of postconviction-relief motions. (Pet.'s Mem., [Docket No. 30], at 15–16).

The Court disagrees. Section 2254(b)(1)(B)(ii) does not apply when the existing state-court remedy for an issue is "adequate" as opposed to "futile," with the latter existing where "the corrective process is so clearly deficient as to render futile any effort to obtain relief." Duckworth v. Serrano, 454 U.S. 1, 3–4 (1981); cf. Young v. Ragen, 337 U.S. 235, 238–39 (1949) ("The doctrine of exhaustion of state remedies . . . presupposes that some adequate state remedy exists."). Reviewing this case's procedural history, the Court cannot conclude that Rule 28.02(4)(4) creates a process that renders "any effort to obtain relief" futile. The record shows instead that Taylor's problems flowed from the particular sequence of actions in his case, not Minnesota rules.

Taylor repeatedly suggests that it was inappropriate for the Minnesota Supreme Court to deny his motion to stay his direct appeal during Taylor I. (Pet.'s Mem., [Docket No. 30], at 2, 4, 14, 16). He ignores, however, that the Minnesota Supreme Court received that motion on the day

20

it was scheduled to consider his appeal—and indeed, *after* it had considered it.  See, Section I.B supra.  Regardless of whose fault it was that the Minnesota Supreme Court got the motion at that late date, the events here do not show that Minnesota procedures themselves make relief-seeking futile.  As a result, the § 2254(b)(1)(B)(ii) exception does not apply here and does not excuse Taylor's failure to exhaust his supplemented public-trial claim.

### b)    Cause and prejudice

The Court next considers whether Minnesota's state procedures provides cause and prejudice sufficient to excuse Taylor's procedural default of the supplemented public-trial argument.  The Court need not address prejudice prong because the cause prong is dispositive. See, e.g., McCleskey v. Zant, 499 U.S. 467, 502 (1991).

As the Eighth Circuit has noted, "[c]ause typically turns on whether some objective circumstance external to the defense impeded counsel from raising the claim."  Kennell v. Dormire, 873 F.3d 637, 640 (8th Cir. 2017), cert. denied sub nom. Kennell v. Griffith, 138 S. Ct. 2690 (2018).  "A factor is external to the defense if it 'cannot fairly be attributed to' the prisoner." Davila v. Davis, 137 S. Ct. 2058, 2065 (2017) (quoting Coleman, 501 U.S. at 753).  And the Supreme Court has noted that the rules for when a prisoner "may establish cause to excuse a procedural default . . . reflect an equitable judgment that only where a prisoner is impeded or obstructed in complying with the State's established procedures will a federal habeas court excuse the prisoner from the usual sanction of default."  Martinez v. Ryan, 566 U.S. 1, 13 (2012).

Although Taylor does not discuss the objective-circumstance standard at all, his view presumably is that the discretion that Rule 28.02(4)(4) gives to appellate counsel is an "objective circumstance external to the defense"—a factor that cannot be fairly attributed to him—that prevented him from factually supplementing his public-trial argument.

The record now before the Court, however, does not suggest that Taylor was "impeded or obstructed in complying with the State's established procedures" in the present case. As discussed in the previous analysis concerning § 2254(b)'s exhaustion requirement, what ultimately prevented Taylor from successfully getting a stay of his direct appeal was not Rule 28.02, but the fact that the Minnesota Supreme Court received his motion to stay after that court had already held its Taylor I conference. Needless to say, the timing of that motion's receipt is not a circumstance "external to the defense." The defense's own conduct thus played a role in the procedural default, and so Taylor's Minnesota-procedure argument does not provide cause excusing the default.

c)      **Standalone habeas claim based on state procedures**

Taylor's Minnesota-procedures discussion suggests that he believes that those procedures' alleged unfairness creates a standalone ground for habeas relief—distinct, that is, from whatever effect the procedures have in excusing his procedural default of the supplemented public-trial claim. That standalone argument, however, must fail; it is itself procedurally defaulted, and Taylor has not shown cause and prejudice sufficient to excuse that default.

Taylor clearly did not fairly present his procedure-based challenge to the Minnesota courts. As noted above, to properly exhaust a claim in state court, a prisoner "must fairly present his claim in each appropriate state court." Baldwin, 541 U.S. at 29. In this context, fair presentation occurs when "the state court rules on the merits of [the petitioner's] claims, or if [the petitioner] presents his claims in a manner that entitles him to a ruling on the merits." Gentry, 175 F.3d at 1083. Minnesota's state courts never considered the merits of Taylor's arguments about Minnesota state procedures, and that is entirely unsurprising—neither the Postconviction-Relief Petition or Taylor's brief to the Minnesota Supreme Court in Taylor II have any discussion of the procedural

22

conundrum ostensibly caused by Rule 28.02(4)(4) of the Minnesota Rules of Criminal Procedure. See gen., Postconviction-Review Mem.; Aplt.'s Br. and Addendum.

As a standalone ground for habeas relief, then, Taylor's Minnesota-procedure argument was never fairly presented. And just like Taylor's supplemented public-trial claim, Knaffla will bar Taylor from trying to bring the claim in state court now. This means that Taylor's Minnesota procedure argument, if construed as a standalone basis for habeas relief, has been procedurally defaulted. Procedural default can be excused upon a showing of cause and prejudice, of course, but Taylor makes no effort to show cause and prejudice here. This Court thus cannot give Taylor habeas relief on the basis of his Minnesota-procedures argument.

### 2.    Ineffective assistance of counsel

The second way in which Taylor suggests that he can show cause and prejudice excusing the procedural default of his supplemented public-trial argument is by attributing it to ineffective assistance from his appellate counsel. (Pet.'s Mem., [Docket No. 30], at 19–21); (cf. Id. at 20–21) ("Fault for failing to seek a stay of direct appeal to pursue postconviction relief and build a factual record lies at least in part at the feet of Taylor's appointed counsel on direct appeal. As such, Taylor's right to effective assistance of appellate counsel was violated.").

Taylor faces a problem here: for ineffective assistance to qualify as cause and prejudice to excuse procedural default of an issue, the ineffective assistance must itself be constitutionally problematic. "In other words, ineffective assistance adequate to establish cause for the procedural default of some *other* constitutional claim is *itself* an independent constitutional claim." Edwards v. Carpenter, 529 U.S. 446, 451 (2000). And the U.S. Supreme Court has made clear that "the principles of comity and federalism that underlie our longstanding exhaustion doctrine . . . require *that* constitutional claim, like others, to be first raised in state court." Id. at 451–52.

23

For Taylor to use ineffective assistance as cause and prejudice to excuse his procedural default, then, he must have fairly presented that ineffective-assistance claim to the Minnesota courts as an independent claim. The Court again notes that fair-presentation occurs when "the state court rules on the merits of [the petitioner's] claims, or if [the petitioner] presents his claims in a manner that entitles him to a ruling on the merits." Gentry, 175 F.3d at 1083. Taylor did state in his Postconviction-Relief Motion that his appellate counsel provided him ineffective assistance. The entirety of that argument, however, reads as follows:

> Appellate counsel's decision not to stay petitioner's direct appeal in order to expand the record on the closed courtroom issue fell below an objective standard of reasonableness for appellate counsel and denied petitioner effective assistance of counsel as guaranteed by the state and federal constitutions. U.S. Const. amends. VI, XIV; Minn. Const. art. 1 § 6.

(Postconviction-Relief Mot. at 2).

The trial court did not explicitly address Taylor's ineffective-assistance claim. See gen., April 2017, Order. Taylor could have argued the point on appeal. Instead, Taylor's appellate brief in Taylor II has no argument whatsoever regarding ineffective assistance. (Aplt's Br. and Addendum at 9). Indeed, he specifically asserted that "counsel's strategy decisions on appeal are *not* likely to result in a finding of ineffective assistance of counsel." Id.

Faced with this, Taylor II determined that Taylor had forfeited appellate review of his ineffective-assistance claim. 910 N.W.2d at 37 n.4. Considering ineffective-assistance claims requires analysis of the standards laid out by Strickland v. Washington, 466 U.S. 668 (1984), the court said, and Taylor's failure to cite Strickland or provide any relevant argument meant that he had forfeited the issue. Taylor II, 910 N.W.2d at 37 n.4. Here again, Taylor failed to fairly present an issue to the Minnesota courts because they determined that a state procedural rule barred review of the issue.

24

And—also again—Taylor's ineffective-assistance argument cannot be exhausted now; Knaffla would bar any attempt to bring the argument in state court now. The issue has thus been procedurally defaulted, and Taylor has made no attempt to show cause and prejudice excusing the default.

Accordingly, this Court will not further consider Taylor's ineffective-assistance claim.

### D.    Alternative-Motive Evidence

Taylor also asserts a second Taylor I error: Taylor asserts that the Minnesota Supreme Court's holding that the trial court was justified in excluding Taylor's requested "alternative-motive evidence"[16] runs counter to Taylor's Sixth Amendment "right to present a complete defense." (Pet.'s Mem., [Docket No. 30], at 22). Taylor claims here that Taylor I "misapplied clearly established law" as laid out in Crane v. Kentucky, 476 U.S. 683 (1986). The Court finds this argument unpersuasive.

Because Taylor asserts that Taylor I "misapplied" Crane, he is required to show that Taylor I "identifies the correct governing legal principle from [Crane] but unreasonably applies that principle to the facts of the prisoner's case." Brende, 907 F.3d at 1085. Taylor's discussion is on this point, however, is unclear. Taylor I does not cite Crane at all, so it is a misnomer to charge Taylor I with misapplying it. See, Taylor I, 869 N.W.2d at 12–14. Taylor's point here instead seems to be that (1) Taylor I applied a harmless-error analysis to determine that, even if it had been error to exclude Taylor's requested alternative-motive evidence, the error was harmless, and (2) that harmless-error determination was a misapplication of clearly established law (i.e., Crane).

---

[16] In his memorandum, Taylor repeatedly uses the phrase "alternative perpetrator evidence." The Court finds this terminology confusing. There is no present dispute as to who fired the relevant shots here: the shooters were Copeland and Catchings. The key issue for Taylor's purposes, as presented here, is whether Copeland and Catchings shared a common motive with Taylor when they fired those shots. In the Court's view, then, it is clearer to refer to this discussion as one of alternative motive, not one of alternative perpetrators.

Crane, however, offers Taylor little assistance.  Indeed, aside from generic references to a defendant's right to present a defense, Crane has nothing to do with the issues presented in the Amended Petition.  In Crane, a 16-year-old defendant charged with murder filed a pretrial motion to suppress his confession, claiming it had been "impermissibly coerced."  Crane, 476 U.S. at 684–85.  After a hearing presenting different factual accounts of the confession, the trial court denied the motion.  Id. at 685.  At trial, the opening statements focused on the confession: the prosecution stressed it as evidence of guilt, and the defense counsel argued that it had numerous inconsistencies undercutting its credibility.  Id.  After the defense opening, the prosecution moved to prevent the defendant from introducing evidence about how the police obtained the defendant's confession, arguing that the confession's voluntariness was a "legal matter" previous established by the court.  Id. at 686.  The court agreed, stating that the defendant could not offer any "evidence about the duration of the interrogation or the individuals who were in attendance."  Id.  After the defendant was found guilty, he appealed, arguing that he had a constitutional right to present testimony about the circumstances of the confession as part of his defense.  Id.  The Kentucky Supreme Court affirmed, and the Supreme Court granted certiorari.  Id. at 687.

The resulting Crane decision does refer generally to a defendant's "fundamental constitutional right to a fair opportunity to present a defense."  Id. at 684; see Id. at 690–91.  But the Crane decision hinged on the Kentucky Supreme Court's misunderstanding of what it means for a confession to be voluntary.  It says nothing about the contours of the right to present a defense in a case like Taylor's.  Crane says nothing about alternative-motive evidence, and nothing about how to make harmless-error determinations in cases involving such evidence.  Given this, there is no basis for finding that Taylor I misapplied clearly established law in Crane.

### E.    Cumulative Error

Taylor's fifth argument is that cumulative error—i.e., the combination of asserted errors regarding Taylor's public-trial right and his right to present alternative-motive evidence—justifies issuance of a writ of habeas corpus. (Pet.'s Mem., [Docket No. 30], at 23–24). As a threshold matter, as the discussion above shows, there are simply no errors here to combine. Furthermore, Taylor simply misstates the law here: The Eighth Circuit has repeatedly said that "cumulative error does not call for habeas relief, as each habeas claim must stand or fall on its own." Henderson v. Norris, 118 F.3d 1283, 1288 (8th Cir. 1997) (quoting Scott v. Jones, 915 F.2d 1188, 1191 (8th Cir. 1990)); see also, Davis v. Grandlienard, No. 13-CV-2449 (DSD/JJK), 2015 WL 1522186, at *6 (D. Minn. Mar. 31, 2015) (quoting Henderson), aff'd, 828 F.3d 658 (8th Cir. 2016). Taylor's cumulative-error argument thus fails.

### F.    Standalone Claim of Ineffective Assistance of Counsel

Taylor's final argument is that he has a standalone ineffective-assistance-of-counsel claim derived from his direct-appeal counsel's decision not to move for a stay of the direct appeal. (Pet.'s Mem., [Docket No. 30], at 24). The claim is "standalone" in the sense that Taylor presents this ineffective-assistance claim as an independent reason for why he merits habeas relief—as opposed to his third argument, in which he uses ineffective assistance as a potential source of cause and prejudice excusing the procedural default of his factual-support-for-public-trial-right claim. (Compare Id. with Id. at 19–22).

This argument fails for the same reasons discussed in Section II.C.2 supra. For ineffective-assistance to provide cause and prejudice excusing his procedural default of the supplemented public-trial claim, he is required to demonstrate that the ineffective-assistance claim was itself constitutionally problematic. In other words, Taylor must show that his ineffective-assistance

claim was a standalone claim for it to even provide cause and prejudice. But as discussed at length above, Taylor procedurally defaulted his ineffective-assistance claim, and has offered nothing showing cause and prejudice excusing that procedural default. Thus, Taylor's ineffective-assistance fails twice—it fails both as a generator of cause and prejudice and as a standalone ground for habeas relief.

### G.    Certificate of Appealability

One final point: a § 2254 habeas corpus petitioner cannot appeal an adverse ruling on his petition unless he is granted a certificate of appealability (COA). 28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22(b)(1). A COA cannot be granted unless the petitioner "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make such a showing, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Slack v. McDaniel, 529 U.S. 473, 484 (2000). In this case, it is highly unlikely that any other court, including the Eighth Circuit Court of Appeals, would treat Taylor's current Petition differently than it is being treated here. It is therefore recommended that Taylor not be granted a COA in this matter.

### III.    Conclusion

Based on the foregoing, and on all of the files, records, and proceedings herein, **IT IS**

**HEREBY RECOMMENDED** that:

1.    Taylor's Amended Petition, [Docket No. 24], be **DENIED**; and

2.    No certificate of appealability be issued.


Dated: January 22, 2019                     _s/ Leo I. Brisbois_____
                                            Leo I. Brisbois
                                            United States Magistrate Judge


## NOTICE

**Filing Objections:**  This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation.  A party may respond to those objections within 14 days after being served a copy of the objections.  *See* Local Rule 72.2(b)(2).  All objections and responses must comply with the word or line limits set forth in Local Rule 72.2(c).